UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN DEL GALLEGO,

  Plaintiff,

  v.

WELLS FARGO & COMPANY LONG
TERM DISABILITY PLAN, et al.,

  Defendants.

Case No.  13-cv-04518-VC

**ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT; GRANTING
DEFENDANT'S CROSS-MOTION FOR
SUMMARY JUDGMENT**

Re: Dkt. Nos. 24, 28

Plaintiff John Del Gallego sues Defendants Wells Fargo & Company Long Term

Disability Plan (the "Plan") and Metropolitan Life Insurance Company ("MetLife"), which acts as

the claims administrator for the Plan.  Del Gallego alleges that the defendants failed to pay

benefits due to him under the Plan in violation of the Employee Retirement Income Security Act

("ERISA") by refusing to reimburse him for amounts Metlife deducted from his long-term

disability benefit payments to offset payments he received in worker's compensation permanent

partial disability benefits.  The parties filed cross-motions for summary judgment.  Del Gallego's

motion is denied.  The defendants' motion is granted in full.

### I. Statement of Facts

The undisputed facts are as follows.  Prior to becoming disabled in 2005, Del Gallego had

worked for a number of years as an Applications System Engineer for Wells Fargo.  In April 2005,

Del Gallego began experiencing pain, numbness and tingling in his upper extremities.  AR 408.

By June 2005, these symptoms had worsened to the point that Del Gallego was unable to work, so

Del Gallego made a claim for benefits under Wells Fargo's short-term disability program.  He also

filed claims for Social Security disability and workers' compensation benefits, and began receiving

workers' compensation short-term disability payments.  In August 2005, MetLife, acting as the

claims administrator for Wells Fargo's short-term disability benefit program, approved his short-

term disability claim.

At the end of the benefit period for short-term disability, Del Gallego was still unable to work.  He filed a claim for long-term disability benefits under the Plan and, in December 2005, Metlife notified Del Gallego that it had approved his claim. The approval letter informed him that his gross benefit would be $5619 per month.  However, the letter also informed him that "certain sources of income are listed as 'other income' and, as such, will cause a reduction in your [long-term disability] benefits."  AR 523–25.  The letter explained that workers' compensation and Social Security benefits were among the benefits that fell within the category of "other income," and that Metlife would therefore take these benefits into account when computing his overall long-term disability payments.  *Id.*  In keeping with this letter, Metlife began making long-term disability payments to Del Gallego, deducting from his gross benefit amount any payments he received in Social Security disability and workers' compensation temporary disability benefits.

By February 2008, Del Gallego's doctors had determined that he had reached the point of maximum medical improvement and that he continued to be disabled.   He received a permanent disability rating of 14 percent.[1]  As a result, he began to receive weekly workers' compensation permanent partial disability ("PPD") benefits totaling approximately $1000 per month.  AR 415.  Metlife continued to reduce the amounts of the long-term disability benefits payments it made to Del Gallego under the Plan to account for these workers' compensation benefits.  From April 2008 through September 2009, Del Gallego's PPD benefits payments—and the corresponding amounts Metlife offset from his long-term disability payments—totaled approximately $17,615.  AR 310.

In June 2011, Del Gallego reported to MetLife that in March 2011 he had received from Specialty Risk Services (Wells Fargo's workers' compensation insurer) a lump sum payment of approximately $12,145 to settle any remaining issues with respect to his workers' compensation claim.  In the same letter, Del Gallego asserted that MetLife "mistakenly" offset the weekly workers' compensation benefits he had received between April 2008 and September 2009.  He

---

[1] In their Motion for Summary Judgment, the defendants state that Del Gallego's impairment rating was 14 percent.  However, a document in the administrative record states that Del Gallego's impairment rating was 21 percent.  *See* AR 310.  The actual disability rating Del Gallego received has no bearing on the outcome of this case, and because Del Gallego does not challenge the defendants' 14 percent figure, the Court assumes for the purposes of this Order that this figure is correct.

United States District Court
Northern District of California

stated that these benefits should not have been subject to offset under the terms of the Plan because the payments were not compensation for lost wages.  The letter requested a reimbursement of $17,615.95, the total of the amounts that had been offset.  AR 310.

Del Gallego continued to receive long-term disability benefits until February 2012, when his eligibility for benefits under the Plan ended because he had reached age 65.  *See* AR 288, 595. In June 2012, Metlife sent Del Gallego a letter responding to his request for reimbursement.  In the letter, Metlife explained that the Plan provides that the benefits a participant is otherwise is eligible to receive are reduced to account for any "other income benefits" received by that participant.  It further explained that worker's compensation benefits are considered an "other income benefit," and that all "other income benefits" a participant receives are offset in their full amount.  AR 283–85; *see also* AR 571, 607.  Metlife stated that, because the amounts for which Del Gallego was seeking reimbursement had thus been properly offset according to the Plan terms, it was denying his request.

## II.  Discussion

### A.  Standard of Review

When, as appears to be the case here, "a plan does not confer discretion on the administrator to determine eligibility for benefits or to construe the terms of the plan, a court must review the denial of benefits de novo."  *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc) (internal quotation marks omitted).

### B.  Denial of Reimbursement

There is no question that the Plan provides that a claimant's monthly long-term disability benefits will be reduced by the full amount of any "Other Income Benefits" the claimant receives (with the exception that the claimant's monthly benefit cannot fall below a specified minimum that is not relevant here).  AR 595, 604.  The parties' dispute thus turns on whether Metlife was entitled under the Plan to treat the weekly PPD benefits Del Gallego received between April 2008 and September 2009 as "Other Income Benefits."

Del Gallego advances two independent arguments for concluding that his PPD payments were not "Other Income Benefits" within the meaning of the Plan.  First, he argues that "Other

Income Benefits" are limited to benefits paid to compensate for lost income, and that his PPD benefits were instead paid to compensate him for the impairment he suffered as a result of his medical problems.  Second, he argues that his PPD benefits were not a periodic benefit.  Neither argument is persuasive.  The Plan does not limit "Other Income Benefits" to only those benefits that compensate for loss of income.  To the contrary, it expressly provides that *all* periodic workers' compensation payments are counted as "Other Income Benefits," without regard to whether those payments are benefits for loss of income.  What's more, even if the Plan did limit "Other Income Benefits" in such a fashion, Del Gallego's PPD benefits were paid in part to compensate for lost income in the form of loss of future earning capacity.  And because worker's compensation PPD benefits are calculated in terms of a claimant's entitlement to a certain number of weeks of payment, they squarely fall within the definition of a periodic benefit.

### 1.  Lost Income

According to Del Gallego, the Plan's "Other Income Benefits" provision allows Metlife to deduct only those benefits paid to compensate for lost income, which he appears to equate with lost wages.  *See* Docket No. 24, p.7.  He accepts that his workers' compensation temporary disability benefit payments were subject to offset as an "Other Income Benefit," but argues that because his PPD benefit payments were not compensation for lost wages, these payments was not subject to offset under the terms of the Plan.

Del Gallego relies heavily on *Russell v. Bankers Life Co.*, 120 Cal. Rptr. 627 (Ct. App. 1975), where a California Court of Appeal examined the different purposes of temporary disability and PPD benefits under California's worker's compensation scheme and concluded that, based on these differences, the insurance policy at issue allowed for offset of temporary, but not permanent, disability benefits.  *Id.* at 634.  The court noted that while temporary disability payments are intended primarily as a replacement for the wages lost while a worker is unable to work, permanent disability serves a dual purpose:

> [P]ermanent disability is for permanent bodily impairment and is designed to indemnify for the insured employee's impairment of future earning capacity or "diminished ability . . . to compete in [the] open labor market."  Thus permanent disability is not based solely on loss of wages, but is based on actual incapacity to

perform the tasks usually encountered in one's employment, and on physical impairment of the body that may or may not be incapacitating.

*Id.* (citations omitted) (quoting Cal. Lab. Code § 4660(a); *see also Granado v. Workmen's Comp. Appeals Bd.*, 445 P.2d 294, 298 (Cal. 1968) ("[P]ermanent disability is not based solely on loss of wages but is based both on actual incapacity to perform the tasks usually encountered in one's employment and on physical impairment of the body that may or may not be incapacitating.").

But Del Gallego's reliance on *Russell* is misplaced. There, the policy at issue limited the benefits subject to offset only to "those providing for *loss of time from employment*." *Id.* at 633 (emphasis added). The Plan at issue here contains no similar limitation. Instead, it lists the sources of "Other Income Benefits" without regard to whether these sources are compensation for lost income. Workers' compensation benefits are included on this list; under the heading "Workers' Compensation or a Similar Law," the list provides that "Periodic benefits and substitutes and exchanges for periodic benefits will be counted." AR 607.[2]

Del Gallego points to the following language in the Plan as evidence that "Other Income Benefits" are limited to benefits for lost income:

> If you receive Other Income Benefits in a lump sum instead of in monthly payments, you must provide to us satisfactory proof of the breakdown of: (i) the amount attributable to lost income; and (ii) the time period for which the lump sum is applicable. If you do not provide this information to us, we may reduce your Monthly Benefit by an amount equal to the Monthly Benefit otherwise payable. We will reduce the Monthly Benefit each month until the lump sum has been exhausted. However, if we are given proof of the time period and amount attributable to lost income, we will make a retroactive adjustment.

AR 604–05. However, by its terms this provision applies only to lump-sum payments; the Plan contains no similar limitation for other forms of "Other Income Benefits." And while it appears somewhat odd that the Plan would require offset only of the portion of a benefit attributable to lost income when the payment is received as a lump sum, but require offset of the entire amount of the

---

[2] The Court agrees with Del Gallego that, where the summary plan description lists workers' compensation benefits as subject to offset without including the qualification, found in the Plan document itself, that only "periodic benefits will be counted," Metlife is bound by the language of the document which is more favorable to the employee, in this case the Plan document rather than the summary plan description. *See Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1145 (9th Cir. 2002). *Compare* AR 571 *with* AR 607.

same source of income when received on a periodic basis, this does not render ambiguous the Plan provision stating that all periodic workers' compensation benefits will be counted as "Other Income Benefits."

Del Gallego also relies on *Cherene v. First American Financial Corp. Long-Term Disability Plan*, 303 F. Supp. 2d 1030, 1038 (N.D. Cal. 2004), where the court examined the terms of a plan very similar to the one at issue here and held that a plan administrator had improperly offset the entire amount of the plaintiff's lump-sum worker's compensation award. Del Gallego's reliance is again misplaced. In *Cherene*, the plaintiff received a lump-sum payment as part of a "compromise and release settlement" of her workers' compensation claims. When notified of the settlement, the claims administrator deducted the entire amount of the lump-sum payment from the plaintiffs ERISA benefits payments. As with the Plan at issue here, the plan in *Cherene* provided for offset of "Other Income Benefits," including workers' compensation benefits. And as in this case, the plan provided that upon receipt of a lump sum settlement, a claimant was required to provide to the administrator "satisfactory proof of the amount attributed to loss of income, and the period covered by the lump sum or settlement." *Id.* at 1038. But unlike in this case, in *Cherene* the plaintiff provided the administrator with a settlement document that expressly stated that "the settlement is intended to compensate the applicant for all aspects of all outstanding issues, including, but not limited to, permanent disability, temporary disability, self-procured medical treatment, future medical care, right to reopen, penalties and mileage, which may be due to date." The court concluded that, based on this express statement, there was no support for the administrator's conclusion that the entire settlement amount was attributable to loss of income. *Id.* at 1038–39.

Where the settlement expressly included compensation for such items as "right to reopen" and "penalties," the total settlement amount could not be entirely attributable to loss of income. But this says nothing about whether the permanent disability component of the settlement could be properly considered a benefit for loss of income. As a result, *Cherene* provides no support for Del Gallego's argument that PPD benefits are not benefits for loss of income. Indeed, the court's conclusion in *Cherene* is consistent with a conclusion that PPD benefits are properly considered loss of income benefits. Moreover, in *Cherene* the plan expressly limited Other Income Benefits

United States District Court
Northern District of California

United States District Court
Northern District of California

to "the amount of any benefit for *loss of income*." *Id.* at 1039. With the exception of payments received as a lump sum, here the Plan contains no such express limitation.

What's more, even if Del Gallego were correct that, under the terms of the Plan, "Other Income Benefits" are limited to benefits for lost income, his argument that PPD benefits are not subject to offset under the Plan assumes an artificially narrow definition of lost income. To be sure, the California courts have made clear that California's workers' compensation PPD benefits are intended to compensate both for loss of future earning capacity and for permanent bodily impairment. But Del Gallego is wrong that this means that the purposes served by PPD benefits are "completely different," from compensation for lost income. Docket 29, p. 5. Del Gallego attempts to draw a distinction between "loss of income" and "loss of future earnings." *See id.* (arguing that offset only applies to benefits that replace lost income, and therefore does not apply to permanent disability benefits, which replace lost earning capacity). But this distinction is unconvincing. Benefits for loss of future earning capacity are properly considered benefits for loss of income. *See Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 533, (1983) (explaining, in the context of a negligence suit, that "[a]n award for impaired earning capacity is intended to compensate the worker for the diminution in that stream of income"). And the language of the Plan provides no basis for limiting "Other Income Benefits" to only those benefits compensating for actual wages lost, as opposed to lost income more broadly.[3]

### 2. Periodic Benefits

Del Gallego contends that his PPD benefits were neither a periodic benefit nor a substitute or exchange for a periodic benefit, and therefore fall outside the Plan's definition of "Other Income Benefits" for this independent reason. Del Gallego argues that "[t]he amount of a permanent

---

[3] It may be possible to determine the component of a PPD payment that represents the compensation for lost future earning capacity as opposed to the component that represents physical loss. *See Milpitas Unified Sch. Dist. v. Workers' Comp. Appeals Bd.*, 115 Cal. Rptr. 3d 112, 119–20 (Ct. App 2010) ("In each case impairment ratings are combined and converted to a 'whole person impairment' (WPI) rating, which reflects the impact of the injury on the overall ability to perform activities of daily living, *excluding work*. The WPI is then adjusted for diminished future earning capacity . . . , the employee's occupation classification at the time of the injury, and age." (emphasis added) (citations and internal quotation marks omitted)). But even if such a determination were possible, Del Gallego did not attempt to provide MetLife with proof that only a part of his PPD benefits were attributable to diminished future earning capacity. Nor does he now argue that his benefits payments should have been apportioned in such a fashion, with only the component for future earning capacity subject to offset.

disability payment under workers' compensation is the result of a one-time computation. It is no more a periodic benefit than is the payment of medical bills incurred as a result of the injury." Docket No. 24, p.10.  He argues that PPD is a "calculated single sum which is found due" (in his case, $29,760) and that any payments he received on a weekly basis were merely advances on this one-time lump-sum benefit, paid in order "to provide him with income while the calculation of the amount owed is being done."  *Id.* at 11.  He contrasts PPD to temporary disability, which is paid at a rate of two-thirds of the claimant's prior average weekly earnings for the entire period in which the claimant is temporarily disabled.  *Id.*

Del Gallego's argument is undermined by the very case he cites for the proposition that PPD is not a periodic benefit, *Milpitas Unified School District v. Workers' Compensation Appeals Board*, 115 Cal. Rptr. 3d 112 (Ct. App 2010).  *Milpitas* clarifies that while a claimant's permanent disability is indeed based on a one-time calculation, which leads to a permanent disability rating expressed as a percentage of disability (in Del Gallego's case, a disability rating of 14 percent), "[a]nything less than 100 percent (total disability) entitles the injured worker to a *prescribed number of weeks of indemnity payments in accordance with that percentage*," *id.* at 119 (emphasis added).  Thus, while it would certainly be *possible* to calculate a single sum representing amount due to a claimant for his or her PPD benefit, this would involve multiplying the amount of the weekly PPD payment by the prescribed number of weeks corresponding with the percentage disability rating.

As a result, Del Gallego's argument that PPD benefits, even where paid on a weekly basis, cannot be considered a "periodic benefit" is unavailing.  While it may be the case that many PPD claims eventually settle for a lump sum payment, this does not change the fact that a PPD rating initially entitles the claimant to a specific number of weeks of payment; in other words, a periodic benefit.

### III.  Conclusion

Reviewing de novo Metlife's decision, the Court finds that Del Gallego's PPD benefits fell within "Other Income Benefits" under the terms of the Plan.  Because these benefits were therefore subject to offset, Metlife properly denied Del Gallego's request for reimbursement.

United States District Court
Northern District of California

Accordingly, Del Gallego's motion for summary judgment is denied.  Metlife's motion is granted in full.

       **IT IS SO ORDERED**.

Dated:  January 23, 2015



_____
VINCE CHHABRIA
United States District Judge